NOWLIN *v.* MEMPHIS PACKING CORPORATION.

Opinion delivered December 3, 1923.

1. CORPORATIONS—SUBSCRIPTION CONTRACT.—Parties may make a valid stock subscription contract, which will be enforced according to its terms, as other contracts are enforced.

2. CORPORATIONS—STOCK SUBSCRIPTION AGREEMENT.—An agreement to take shares in the capital stock of a corporation may depend upon a condition precedent or subsequent, as the parties may

agree, and they are bound to perform their contract according to their intention as it appears from the language of the contract.

3.   Corporations—subscription contract.—Where a note given by a stockholder in payment of stock stipulated that it should not be due until a certain number of shares of preferred and of common stock have been paid for, performance of such condition is a condition of recovery on the subscription.

Appeal from Craighead Circuit Court, Jonesboro District; *W. W. Bandy,* Judge; reversed.

STATEMENT OF FACTS.

The Memphis Packing Corporation brought this action in the circuit court against Dr. R. T. Nowlin to recover $500 on a stock subscription contract. The defendant denied liability.

It appears from the record that the plaintiff is a corporation doing business in Memphis, Tenn., and obtained authority to sell its stock in the State of Arkansas. Thereafter, on the 28th day of May, 1919, the defendant signed a subscription contract for 7½ shares of stock in said corporation for which he agreed to pay the sum of $625. One hundred and twenty-five dollars of this was paid in cash, and the contract recites that the balance was to be evidenced by non-negotiable notes in the sum of $500, payable to the order of the Memphis Packing Corporation.

Section 2 of the contract reads as follows: "I agree and understand that the cash referred to in paragraph 1 hereof is to be used only for the organization expense and commissions, and in furthering the plans contemplated by the Memphis Packing Corporation; it being understood and agreed that the balance of the subscription, represented by the non-negotiable note tendered herewith, shall become due and payable in accordance with the provisions of said note, after subscriptions for at least 2,500 shares of the preferred stock and 1,250 shares of the common stock of the said company shall have been secured by the said Memphis Packing Corporation, the necessity of securing any additional subscriptions over and above the said amounts being waived.

Said stock shall not be issued by the company until fully paid for, and shall carry no voting power until said time.''

On the same day the defendant executed his promissory note to the plaintiff for $500, due on September 1, 1919. The note contains the following: ''This note is non-negotiable, and is subject to the terms and provisions of a printed subscription agreement of even date herewith, executed by the undersigned in favor of the Memphis Packing Corporation.''

On the 11th day of April, 1921, the State Bank Commissioner revoked the authority formerly given to the plaintiff to sell its stock in the State of Arkansas, because it had failed to comply with the law in regard to filing its reports. The stock was issued by the corporation and tendered to the defendant on November 18, 1921, but the defendant refused to accept and receive the same.

The case was tried before the circuit court sitting as a jury, and, from a finding and judgment in favor of the plaintiff the defendant has duly prosecuted an appeal to this court.

*John W. Scobey,* for appellant.

Appellee had no right to sell stock in this State, after its right to do so was revoked by the Banking Department. 147 Ark. 402. There was no delivery of the stock, or attempted delivery, until after the revocation, therefore the sale was not complete, and no title passed. 151 Ark. 513. There was no consideration for the note, since it was for stock in an insolvent corporation. 157 Ark. 37.

*A. P. Patton,* for appellee.

The case cited by appellant at 147 Ark. 402 is not in point, because there the corporation had not been authorized to sell its stock at the time the sales were made. Appellee did have that authority at the time of the transaction in question. Subscription contracts for purchase of capital stock have been held valid by this court. 106 Ark. 462; 92 Ark. 504; 97 Ark. 248. The

contract waived the issuance of the stock at the time of the transaction. 26 U. S. (L. ed., p. 179). A failure on the part of appellee to deny insolvency is not an admission to that effect, so as to render the note and contract void. See 130 Ark. 167; 129 Ark. 406; 98 Ark. 211.

HART, J., (after stating the facts). It is true, as contended by counsel for the plaintiff, that parties may make a valid preliminary stock subscription contract which will be enforced according to its terms, just as other contracts are enforced. *Snodgrass* v. *Zander & Co.*, 106 Ark. 462, and cases cited. It is also true that, like other contracts, an agreement to take shares in the capital stock of a corporation may depend upon a condition precedent or subsequent, just as the parties may agree upon, and that they are bound to perform their contract according to their intention, as it may appear from the language of the contract. *Arkadelphia Cotton Mills* v. *Trimble,* 54 Ark. 316; *Turner* v. *Baker,* 30 Ark. 186, and *Rogers* v. *Galloway Female College,* 64 Ark. 627.

In the case first cited, the articles of association subscribed by Trimble contained the following provision: "The amount of capital stock of the said corporation shall be fifty thousand dollars, of which fourteen thousand five hundred have been subscribed by the corporators aforesaid, and the residue may be issued and disposed of as the board of directors may from time to time order and direct."

The court held that it did not appear, from the language quoted, that the corporation should not begin business until all the capital stock was subscribed, or that the subscriber should not be required to pay anything until that time. The corporation was engaged in business when Trimble subscribed for the stock, and the court held that he was liable. In *Rogers* v. *Galloway Female College, supra,* following *Turner* v. *Baker, supra,* it was held that, where a committee, authorized to locate a college, proposed to locate it when the sum of $25,000 was

subscribed, neither the committee nor the subscribers were bound, under the terms of such offer, if less than the sum specified was subscribed.

We think that, under the terms of the contract in the present case, the securing of subscriptions of at least 2,500 shares of preferred stock and 1,250 shares of common stock was a condition precedent to a right of recovery on the part of the corporation. The note sued on recites that it is non-negotiable, and that it is subject to the provisions of the subscription agreement.

Section 2 of the subscription agreement is copied in full in our statement of facts. By reference to it it will be seen that the cash payment made by the subscriber was to be used for organization expenses, and that the balance of his subscription is represented by the non-negotiable note sued on. The agreement recites that it shall become due and payable in accordance with its provisions after the subscription for at least 2,500 shares of preferred stock and 1,250 shares of common stock shall have been secured by the corporation. It further recites that the necessity of securing any additional subscriptions above said amounts is waived. Until its contract with the subscriber was performed and it was made to appear that the subscriptions had been secured as provided in the contract, the corporation had no right whatever to recover from the subscriber.

It appears that the subscriber had made his cash payment for organization expenses, as he agreed to do. It was then incumbent upon the corporation to perform its part of the contract by securing the subscriptions in the amount agreed upon, and without this it could not recover in this case.

We think that it is plain, from a consideration of the note sued on, in connection with the stock subscription agreement, it was the intention of the parties to make the subscription for shares, as expressed in the agreement, a condition precedent to the right of the corporation to recover upon the note sued on. The note sued

on expressly states that it is subject to the provisions of
the subscription agreement, and it recites that it shall
become due and payable after the subscriptions for a
designated number of shares of preferred stock and of
common stock shall have been secured.

The fact that the securing of these shares of stock
is a condition precedent to the right of the corporation
to recover on the stock subscription note is thus shown
by the plain language of the contract, and this, as we
have already seen, must govern. This construction of
the contract is borne out by the words which follow,
stating that the necessity of securing additional sub-
scriptions over and above such amounts is waived.

There is nothing in the record showing that the cor-
poration complied with the condition to secure the sub-
scriptions in the amounts agreed upon, and it follows
that the court erred in finding for the plaintiff and ren-
dering judgment in its favor against the defendant upon
the subscription note.

For this error the judgment must be reversed, and
the cause will be remanded for a new trial.