Calvin Watson Motor Sales, a Corporation, Plaintiff-Appellant, v. W. H. Devaull, Defendant-Appellee.

Gen. No. 64–F–26.

Fifth District.

June 10, 1964.

Rehearing denied September 11, 1964.

Berbling & Spomer, of Cairo, for appellant.

No brief filed for appellee.

SPIVEY, J.

The plaintiff, Calvin Watson Motor Sales, a corporation, perfected this appeal from a judgment of the Circuit Court of Pulaski County. Plaintiff brought an action in a justice court against defendant, W. H. Devaull, for $358.24 for stopping payment on a check given in exchange for defendant's promissory note in that amount. The Justice of the Peace found for the plaintiff and the defendant appealed to the Circuit Court of Pulaski County. In the Circuit Court, defendant demanded a jury and asserted a counterclaim for damages said to have been sustained as a result of claimed improper repair of an automobile. There were, of course, no pleadings prior to trial of the cause.

The jury returned a verdict for the defendant on the plaintiff's claim and a verdict for the plaintiff on the defendant's counterclaim. Plaintiff filed a posttrial motion which was denied and plaintiff has appealed. Defendant has not filed a brief in this court.

The facts are quite simple. Plaintiff repaired an automobile for the defendant and submitted a bill for $558.24 when the vehicle was delivered to the defendant July 1, 1961. Defendant paid $200 in cash and gave the plaintiff a note for $358.24 for the balance due. On July 22, 1961, the defendant called at plaintiff's garage and gave plaintiff a check for $358.24. Plaintiff surrendered defendant's note and defendant destroyed the note. When the check was presented for payment it was refused because defendant had stopped payment. After payment was stopped on the check, defendant for the first time contended that the repairs were not according to the agreement. He, however, stated that he was aware of this condition shortly after he had taken delivery following the repairs.

126

Plaintiff, among other things, contends that because the defendant gave his check for the note which he had previously given at the time the car was delivered, and at a time when, it is admitted, he knew of the claimed failure of consideration, the defendant should now be estopped to assert the defense of failure of consideration as against the check.

It is stated in plaintiff's brief that there is no case in Illinois squarely on this point and our research supports this statement.

Further, plaintiff has not cited, nor have we found a case in any jurisdiction which is on all fours with this case from a factual basis. It is suggested, however, that this situation is analogous to a renewal note situation, and we agree with this contention.

■■ The great weight of authority in this country supports the position that where a new note is given in exchange for a note which has matured, the effect of this is to waive the defense of failure of consideration, if the failure of consideration was known or reasonably should have been known by the maker at the time of the giving of the new note. Britton, in his work, Handbook of the Law of Bills and Notes, 732, § 154, states:

> "The question that can arise in this simple renewal transaction concerns the status of defenses which the maker would have had if an action had been brought against him on the old note. If the maker who has knowledge of facts which constitute a partial or complete defense to an action on the old note, nevertheless, issues his renewal note, it is usually a fair interpretation of the transaction that he thereby waives such defense. Basically, the situation is like that of an acceptance of goods by the buyer with knowledge of the seller's breach of warranty. The acceptance of the goods, with knowledge of the breach, destroys the buy-

er's right of rescission and the acceptance may even be of such a nature that the independent action for breach of warranty also may be destroyed. A defective performance of whatever nature may be accepted in lieu of full performance such that the once existing rights of rescission, of counterclaim and of recoupment are lost. While the issuance of a renewal note is not an acceptance, it is a transaction in which the maker, just like the buyer of goods, says to the adverse party: 'You did not do what you said you would do, or, you took unfair advantage of me in inducing me to make my promise, but nevertheless I am satisfied sufficiently that I shall make no trouble over the matter.'

"The law takes a party at his word and holds him to his bargain. Accordingly the execution and issuance of a renewal note operates as a waiver of known defense to the original note and existing defenses which, by the exercise of reasonable diligence should have been known."

To the same effect is the case of Mason Paint Co. v. Sparrow, 320 SW2d 131 (Ky). There, Sparrow purchased paint and later gave a six months' note to cover his open account. Subsequently he renewed the note and at the time of maturity of the note he paid $100 thereon. Thereafter, Sparrow attempted to return the unsold portion of the paint but the return was rejected by the plaintiff and an action was brought on the note. Sparrow claimed fraud and deceit as a defense and a jury found in his favor. In reversing the verdict of the jury, the Court said, "Where the maker of a note renews the same with knowledge of material facts or with knowledge of fraud and deceit in its procurement, he is deemed to have waived the defense and is estopped to set it up to defeat recovery on the renewal note."

The case of Harrington v. Citizens Investment & Security Co., 160 Ark 320, 254 SW 831, reaches the same result. There, Harrington, on the promise of the defendant company to increase its capital stock to $100,-000, subscribed for $1,000 worth of stock. He paid $100 in cash and gave a note for the balance. After he learned that the capital stock was increased only to $75,000, he executed a renewal note which he later refused to pay because of claimed failure of consideration. The Court said, ". . . the giving of a renewal note with the knowledge at the time of the failure of consideration for the original note waives such defense and the maker is thereby estopped from pleading such failure in an action on the renewal note." See also 44 Harvard Law Review 291; 4 Tulane Law Review 305, 17 Louisiana Law Review 466; 72 ALR 600.

We see no reason to distinguish between the giving of a note and the giving of a check as in the instant situation. In either case, the debtor agrees to pay the indebtedness. In the instance of the check, the promise is to pay upon demand and in the case of the note, the payment is to be made at some designated future time. When the plaintiff parted with the note and the defendant became the holder in his own right, the note was thereby discharged. (Ill Rev Stats c 98, § 140(4) (1961).) There no longer remained an enforceable obligation under the note, and by the same token any defense to the note was waived by the discharge of the note. There would seem to be no reason to preserve a defense to a negotiable instrument which the maker by his own acts and with knowledge of the defense knowingly discharged.

Thus, after the discharge of the note there remained for consideration, only the present action on the check. The check was given for valuable consideration. Section 45 of the Negotiable Instruments Law (Ill Rev Stats c 98, § 45 (1961)) provided, "Value is any consid-

eration sufficient to support a simple contract. 2. An antecedent or pre-existing claim, whether for money or not, constitutes value where an instrument is taken either in satisfaction therefor or as security therefor and is deemed such, whether the instrument is payable on demand or at a future time."

While it is true that failure of consideration was made a defense against a holder, not in due course (Ill Rev Stats c 98, § 48 (1961)) here there was no failure of consideration for the check. The check was given in discharge of the note. The plaintiff surrendered the note in exchange for the check and the defendant destroyed the note, thus freeing himself of a pre-existing obligation or duty.

The only legitimate inquiry on the trial of this cause was whether or not the check was supported by good consideration. All the evidence showed that the check was given for value. There was no failure of consideration as to the check and there was no defense to the plaintiff's suit.

The trial court erred in failing to enter judgment for the plaintiff notwithstanding the verdict of the jury as requested by plaintiff's post-trial motion. Inasmuch as the claim of the plaintiff is for a definite sum it will not be necessary that the cause be remanded to the trial court. Plaintiff should have been granted a judgment for $358.24, the amount of the check, plus his costs of suit.

Because of the foregoing, it will serve no useful purpose to discuss plaintiff's other contentions.

The judgment of the Circuit Court of Pulaski County is reversed and remanded with directions to enter judgment for the plaintiff and against the defendant in the sum of $358.24, together with interest and costs.

Reversed and remanded with directions.

CROW, P. J. and SMITH, J., concur.